Good morning, your honors. Doug Keller on behalf of Mr. Bazar. The federal government indicted Mr. Bazar and ultimately convicted him of sex trafficking via fraud, thereby triggering a 15-year mandatory minimum penalty. But Mr. Bazar didn't commit that particular crime. The sexual conduct he knew he would cause, a happy ending massage, does not constitute a quote sex act within the meaning of the sex trafficking statute. This court should define sex act similar to the way sexual act has been defined for purposes of the general sex crime statutes. And that's because that courts typically should define similar terms similarly when they appear in statutes governing the same general subject matter. And that would mean this court should define sex act essentially as anal, oral, or vaginal sex. And because a happy ending massage doesn't constitute one of those three things, the government introduced insufficient evidence to The government's primary argument of appeal seems to be an appeal to the dictionary. I think the problem is the dictionaries themselves don't agree. They provide different definitions. And I think this just reflects the fact that most of us will have different opinions and views on what constitutes sex. And so it's not surprising that the dictionaries themselves disagree. And so when we're trying to figure out what Congress intended, I think the best indication of that is how it defines sexual act for purposes of the general sex crime statutes. Well, are those statutes, do they have the same purpose? I mean, the section we're talking about is trafficking, commercial trafficking in sex. Whereas the others, abusers who aren't necessarily doing it for money at all. Not necessarily, but I think that the general idea is that you have to look to determine not necessarily the statutes have the identical purpose. You know, obviously different statutes will always have different purposes. But instead, do they just govern the same general subject matter? And here, I think the general sex crime statutes and the sex trafficking statutes do because they both, they all deal with sex crimes. And I think you see that with what Congress itself has done. Congress, when it was amending the sex trafficking statutes, specifically looked to the general sex crime statutes as a model for purposes of the mens rea with respect to part of the sex trafficking statute. Congress itself has also continually grouped these statutes together for purposes of administrative subpoenas, for purposes of release pending trial, for purposes of sentencing. They consistently... They also group kidnapping in that same categorization, don't they? That's right. They group... So, I mean, it's not just sex offenses grouped together. It's not, but I think in all those statutes, you consistently see these statutes viewed similarly. And I think that's because they all deal with sex crimes. These are the limited number of statutes that the federal government deals with sex crimes. Your main fuss is if the district court refused to define the term, right? In part, yes. I mean... And because the statute doesn't define the term, does it? It just talks about any sex act. That's correct, Your Honor. What's your... I mean, in the district court, it said, quote, the district court said, common sense tells me that masturbating an individual for purpose of obtaining ejaculation is a sexual act. What's wrong with that reasoning? I think the problem with that is I don't think that's what Congress intended. And I think that if you ask different people what they view as a sex act, I suspect you'll get very different answers. I understand that was the district court's view. I think other people have different views. And we're trying to determine what Congress intended. I think the best way to figure that out is to look to how they define the very similar term, sexual act, in the general sex crime statutes. I also think it's incredibly problematic not to provide the jury with any definition at all of what constitutes a sex act. He didn't define prostitution either, did he? Are you claiming that's an error? He actually did define prostitution. He defined it essentially as committing sexual acts for money. But he, of course, then didn't provide a definition of sexual acts. And it is an error not to define prostitution as it has been defined since 1908, which is not just general sex acts for money, but instead intercourse for money. So it's certainly a separate argument with respect to the Mann Act conviction. Can you cite us any case that has held that it is error for the district court not to have defined the term sex act? I can't because every single case, as far as I can tell, that deals with a sex trafficking statute deals with vaginal sex. As far as I can tell, this is the first time the government's ever tried to use this statute to criminalize anything other than vaginal sex. So we've got a case of first impression here. We do. And that, and so not to repeat myself, but I guess I will. I do think the best indication of what Congress meant by sex act is what it said with respect to sexual act and the general sex crime statute. Do you have anything in the legislative history that tells you that? Or are you just trying to compare the two statutes? There's nothing particularly helpful in legislative history. Of course, my view is that that's because I don't think anyone thought people would bring a sex against someone who wasn't involved with oral and vaginal sex. I don't think it's a coincidence that there aren't any cases on the meaning of this term, because I think until this case, generally speaking, the federal government understood it to mean anal or vaginal sex. With my limited time, I was actually going to skip ahead into the closing argument issue, but I don't want to cut the court off if there's questions. Let me just ask you a question. But factually here, what the jury could have actually found that there was more than just the happy ending massage. They couldn't find there was a pattern or practice of that. With respect to Sokotvikova. Can we look at the intent for the trafficking? You have to look at the intent, but as this Court said in Todd, there must be some sort of pattern, because the statute's very bizarrely written and essentially requires the defendant to know what's going to happen in the future. And so Todd said that to do that, there needs to be some sort of pattern or practice of the sex act occurring. What about the menu that the victims were supposed to read to people who inquired about their services? Well, the menu, the top part talks about happy ending massages. The bottom part talks about more. Talk about it. Sure. I think the important point, though, is that the defendant, I'm sorry, the Sokotvikova and Manicova were never required to read that bottom part of the menu. And I think it's important to remember that Sokotvikova was with Mr. Bizarre for 11 days, and she never had sex with anyone, never claimed that Mr. Bizarre pressured her to having sex with anyone. All she did was give happy ending massages for the entirety of the 11 days. And I think that's why the government sort of realized it has to prove this pattern in practice, and it can't with respect to Sokotvikova if you think sex act means more than, I'm sorry, if you just think it means a happy ending massage. So skipping ahead very briefly to the closing argument issue so it doesn't get lost, the government began its rebuttal closing argument by taking a cheap shot at defense counsel, essentially calling her a victim blamer. And we all understand that in a sex trafficking case, calling someone a victim blamer is obviously an emotional appeal. It's a cheap shot. And not only did the government take the cheap shot, when we objected, the district court judge, Judge Benitez, affirmed that, no, that was actually a fair characterization of what defense counsel had done. But it wasn't a fair characterization. Our position has always been that Mr. Bazar didn't force anyone to do anything. Instead, these women chose to do what they did for money. So the government took a very legitimate defense to fraud and turned it into something important. And that's simply not proper, and that shouldn't happen in Federal court. So at the very least, we would ask this Court to reverse all the convictions for that reason. Sotomayor, I'm going to save you the last two minutes. Yes, Your Honor. Thank you. Good morning. May it please the Court, Mark Rahe for the United States. May I ask you one question before you start? Does your case rest on the happy ending does fall within the statute? Not entirely, Your Honor. We believe that it does fall. No, I know you believe it, but I'm asking you whether that's your case. I mean, there's so much discussion about happy ending. Is that your case, that it's because of the happy ending, or is it more than that? Well, we believe it is also more than that. As Judge Wardlaw pointed out, that in evidence exhibit 100, at page 751, it specifically says, blow job extra $200, full service extra $400. In addition, at excerpt of record 145, evidence came out of trial that during an argument with the victim IM, the defendant claimed, quote, to be a pimp, end quote, and he also claimed that all the girls who came to work for him slept with clients, and I have to also. And if I refuse, then he There is evidence in addition to just the happy endings, but we wanted to meet the defense on the argument that they brought before this court. So as a matter of statutory interpretation, I think it's important to keep in mind the broad language that Congress used. In 18 U.S.C. 1509, or 1591 sub E3, as Judge But Congress uses the word any before sex act, and as this court is aware from the authority we sought in our brief, any time Congress uses the word any, it's signaling a broad intent. In addition to that, the definition that my opponent wants to use at 2246, that is prefaced with the words as used in this chapter. But you know you're on to where the happy ending is. Okay. But was your case based on the fact that a sex act was, you know, the happy ending was a sex act, or did you, was your prosecution based on the fact that these women were induced to cross the line to perform all the acts on the sheet? It was both, Your Honor. Well, it can't be both. If it was based on all of it, that includes happy ending. Well, then that's what I'm, maybe I'm misunderstanding. So you're saying your case is not based on happy ending? Alone, no. No, it's based on the, on the sheet. Well, the sheet's one piece of evidence. The argument that I cited in excerpt of record 145 is another. Our point is, let's talk about the 2422 count. As this court held, Judge Wardlaw, I believe you authored an opinion, Roszkowski, it's not at all the victim's understanding, it's the defendant's intent. Even if this defendant is only saying in his ad happy endings, and even if the victims say we don't want to have sex with clients, we look only to his intent. And here, when he specifically has a menu page, and again, that's excerpt of record 751, which says blow job extra 200, full service extra 400. And when he tells one of the named victims of this case, again, in excerpt of record 145, that all the girls who have come to work sleep with clients and I have to also, that is the additional evidence that this defendant wanted more than the happy ending. So that's why. So is this the first time the government has prosecuted a case involving happy endings? Is this really a case of first impression if we decide, if we're going to decide one way or the other, that happy endings constitutes any sex act? I believe it is, Your Honor. I tried to pride myself on my research skills. I made an exhaustive search. I know my opponent's a bright lawyer. He looked as well. And, you know, since then, I believe I had an email a few months ago from some other district I don't remember where. They were asking. I think they were going to initiate, but there's no case that involves that. Of course, on the state side, and we cited a number of these cases going back to the 70s and 80s when there was the blooming of the massage parlors, there's plenty of state courts that have decided that masturbation for money is prostitution, is a crime. I don't believe that any federal court, let alone this court, has done so. But, again, going to that... In your brief, did you ever rely on anything other than the happy ending that's constituting the sex act? I believe I did, but I... Well, that was the issue we tried to meet. I know under the 2422, the pages 53 and 54 of our brief... Pardon me, 53 and 54? Correct. We said that plenty of evidence showed that was still defendant's intent, which is what matters. His instructional sheet from ASUS has expressly listed a surcharge for intercourse. And then on the next page, 54 of the brief, I say, in an argument with IM, and that's the argument I was referencing earlier, he claimed to be a pimp, and he claimed that all the girls who came to work with him slept with clients, and I have to also. All right. The 54... Wait. 54, under the section about prostitution? 53 and... Pages 53 and 54, correct. All right. But on 54, are you referring to the comments about prostitution? That counts. Correct. All right. So not the prostitution count, but the other counts. The only reference in your brief other than the happy ending is that there's... No, that's prostitution also. Both those pages relate to the prostitution count. Correct, yeah. All right. So for the other counts... Right. There's no reference in your brief to anything other than the happy ending. I think that's accurate. So returning to that question again, Congress used broad statutory language. They said any sex act. The definition that my opponent wants to be incorporated is from 2246. It's specifically prefaced as used in this chapter. Well, that's chapter 109A, which is sexual abuse. 1591 is in chapter 77, which is peonage, slavery, and trafficking in persons. And I believe Judge Gilman asked, was there anything in the legislative history? We think there is something very important. Congress, in fact, expressly codified the findings. In 2000, when it turned to sex trafficking, it said prior existing laws were inadequate to deter this evil, which is a different sort of thing. It involves commerce and exchange of consideration as well as multiple victims. Why would Congress in 2000 pass a law to address this harm, this perceived harm of sex trafficking, and say that prior laws were inadequate, and yet now we would incorporate a definition of sex act from a prior law? That would be, I would submit, irrational, Your Honor. And again, this Court has case law that says as long as it's a term of common understanding, the judge doesn't need to further specify a definition. You could not have a single definition to include every single possible sex act that might qualify for prosecution under this section. Congress itself, in 1591, E3, found no need to define the term sex act. This Court would really have to stand common sense on its head in order to find that masturbation for money, direct contact with someone's genitals for the purpose of climax and charging... Well, there are people who believe that it's not a sex act if it's not intercourse. There are some people who believe that, and some groups that believe that. It is disturbing in a criminal statute that there's no definition of any kind, and the Court won't give a jury definition. That doesn't necessarily answer the question, but it's got to be disturbing if you look at the concept of giving adequate notice. It's hard for me to understand the proper for Congress to say, well, it's a sex act, which is an undefined term, and the Court also says, I'm not going to tell the jury what a sex act is or isn't, and you just leave it up to every jury to decide what constitutes a crime. Well, I don't know about... I would respectfully disagree, Your Honor. This Court has had case law for decades that says a district judge is not obligated to define terms of common ordinary understanding. We would submit... Directly contacting somebody's genitals for money, that would seem to be a common understanding of masturbation for a mother. Directly contacting somebody else's stranger's genitals in exchange for money, I mean, I think we'd be hard-pressed to say that that's a crime. But you must yourself be aware that there are people who do not agree with that. And they want to change the law. That's one thing. This is the law. I don't think Congress counts as those people. Common understanding? What does common understanding mean? It means that everybody shares that view, or... Well, these are the terms the Supreme Court came up with, Your Honor. I didn't make up this term. It says terms of common ordinary understanding. A sex act in exchange for money, touching somebody's genitals for money, that would seem to be a commercial sex act. At least that's our position. We believe that the Court was reasonable in finding as much. And I do realize my time is out. If I could have 20 seconds to address the... Sure, of course. The misconduct claim, we'll simply say this. It was a one-time reference. The District Court, there was an objection the District Court ruled. The prosecutor never mentioned it again. The Supreme Court in Donnelly v. DeCristoforo says that one phrase, even if this Court had a problem with it. This was a three-day trial. The closing statements were 20 pages by each party. We don't believe that that affected, reasonably affected the case. Thank you. Just a few points, Your Honor. First, we've been talking about the sex act issue only in context of the sufficiency of the evidence issue. But there's also a jury instruction argument. And so even if you think that there's sufficient evidence to find that Mr. Bizarre knew that these women would have sex, that doesn't answer the jury instruction issue, which is important, especially because at closing, the government capitalized on the fact that the jury could have believed that a happy ending massage constituted a sex act. And for the reasons I've already mentioned, I think that's just not right. Setting that aside for the moment, I do want to reiterate, I think the reason why the government didn't ever argue in the context of the sufficiency issue that sex was enough here is because the second woman never had sex with anyone, never felt pressure to have sex with anyone, never testified that she thought she had sex with anyone. In fact, she felt empowered enough that when someone asked her for sex or oral sex, she felt empowered enough to say no. And so I think that's very problematic for the government's case that this was a business involving sex. It wasn't. That was the experience of one woman, but not the other woman. Briefly, on the closing argument issue, the prosecutor didn't mention this victim blaming issue once. She mentioned it twice. After she mentioned it, and I would note that she began her rebuttal argument by calling defense counsel by name the victim blamer. After the district court judge told the jury that was a fair comment, the prosecutor then once again called defense victim blamer. I think either once or twice more immediately thereafter. This was a relatively short trial, and this was an emotionally charged ending to the government's closing, and what I think was pretty obviously a close case since the jury rejected most of the government's case. So I certainly think a very emotionally charged statement to end the rebuttal argument, I'm sorry, to begin the rebuttal argument could have swayed the jury to convict. It certainly might have convinced someone who was on the fence that they should vote guilty because they didn't want to side with the victim blamers. If the court has no further questions. Thank you. Thank you, your honors. Case just argued will be submitted.
judges: Gilman, Reinhardt, Wardlaw